UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jocelyn Mammen,

Plaintiff,

Case No. _____

v.

**COMPLAINT**

Hartford Life & Accident Insurance Company; Target Corporation – LTD Reserve Buy-Out, Plan/Plan Administrator,

Defendants.

Plaintiff, Jocelyn Mammen, for her Complaint, states and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and principles of federal common law developed thereunder.

2. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(e)(1), ERISA § 502(e)(1), and federal questions jurisdiction under 28 U.S.C. § 1331.

3. Venue is proper in this District under 29 U.S.C. § 1132(e)(2), ERISA § 502(e)(2), because the case involves an employee benefit plan administered in this District and the Defendants may be found in this District.

## THE PARTIES

4. Plaintiff Jocelyn Mammen ("Mammen" or "Plaintiff") resides in Minneapolis, Minnesota.

5. Mammen was formerly employed by Target Corporation.

6. As a consequence of her employment, Mammen participated in Target's long-term disability plan.

7. Target's long-term disability plan was self-insured during Mammen's employment. Based on information and belief, in 2009, Hartford Life & Accident Insurance Company took over funding of Target's self-funded long-term disability program through a reserve buy-out program. Hartford Life & Accident Insurance Company took over liability, effective January 1, 2010, under the Policy Number GLT-395265.

8. Mammen's benefit is now payable under the Target Corporation—LTD Reserve Buy-Out Plan. The Plan Number is GLT-597. The plan administrator and policyholder are also identified as Target Corporation—LTD Reserve Buy-Out.

9. Hartford Life & Accident Insurance Company ("Hartford") was at all relevant times during the claims denial process the insurer of, the claims administrator for, and a fiduciary of the LTD plan.

## FACTUAL ALLEGATIONS

10. Plaintiff Jocelyn Mammen worked as an Inventory/Management Specialist at Target Corporation at the time of her disability on April 30, 2003. As an employee of

Target Corporation, she became eligible for and was covered as a participant in Target Corporation's group long-term disability plan.

11. Mammen initially became disabled due to her pregnancy in 2003 with a diagnosis of pubic symphysis diastasis (separation of the pubic bone), sciatica and chronic pain. Her last date of work was April 30, 2003. She was later diagnosed with fibromyalgia and other conditions.

12. Mammen was approved for long-term disability benefits. Disability under the long-term disability plan is defined as:

> Disability or Disabled means during the first 12 months of benefit payments, Your Disability must prevent You from performing Any Occupation and, following the 12 months period, Disability must meet two tests:
>
> 1) the Disability must prevent You from engaging in any work or occupation for which You are, or may become, reasonably fitted by education, training or experience; and
>
> 2) the Disability must meet Social Security disability requirements and Your approval or retroactive approval for Social Security Disability Income must occur within the 24 months period following the date Disability began.

13. Mammen filed a claim for Social Security on May 26, 2004 and was approved for Social Security Disability on August 20, 2004. Mammen continues to receive Social Security Disability benefits.

14. Mammen was determined to be disabled and meet the terms of the plan until Hartford terminated her benefits effective March 14, 2015.

15. In 2006 treating physician Joseph Ofstedal, M.D., completed a disability form giving the diagnoses of fibromyalgia, palmer-plantar hyperkeratosis, and elevated CSF opening pressure, with symptoms of fatigue, headache and chronic pain.

16. A Physician Statement of Continued Disability was completed by Dr. Ofstedal in 2010, providing a primary diagnosis of fibromyalgia and palmer-plantar hyperkeratosis, listing symptoms of pain, fatigue, and cognitive dysfunction. Physical exam findings included hand and feet pain, inflammation, thick skin, and tender trigger points.

17. In 2010, Mammen had a consult at the Sleep Medicine Clinic at the University of Minnesota Medical Center, Fairview. She was diagnosed with chronic insomnia, multifactorial, probable restless leg syndrome, and night eating syndrome among other diagnoses.

18. A Physician Statement of Continued Disability was completed by Dr. Ofstedal on April 26, 2013, providing a primary diagnoses of fibromyalgia and palmer-plantar hyperkeratosis and secondary diagnosis of chronic pain, listing symptoms of pain, fatigue and cognitive dysfunction. Physical exam findings included fatigue, diffuse tenderness and thick callous feet.

19. Dr. Ofstedal's notes on April 21, 2014 state that Mammen has a lot of pain and that her pain overall is worse. He states her sleep is very disruptive. He indicates that her medications cause side effects.

20. In February 2014, Hartford conducted an interview of Mammen. She informed Hartford that nothing has changed regarding her medical condition. She stated that she is very limited in her walking/standing ability due to her foot disease, that she has fatigue from her fibromyalgia and spends most of her time in bed.

21. Mammen's claim was proactively reviewed by Hartford's surveillance investigative unit, but the unit was unable to identify any evidence warranting continued investigation.

22. Hartford then decided to order an independent medical examination of Mammen, determining that Mammen's "extent of functionality" was "still unclear."

23. At the request of Hartford, Mammen attended an independent medical evaluation conducted by Elena Polukhin, M.D., on December 16, 2014.

24. Dr. Polukhin issued a report dated December 18, 2014. She opined that Mammen was capable of working full-time sedentary work, able to sit eight hours at a time for a total of eight hours a day, with a break 5-10 minutes every hour to stand and stretch; stand for one hour at a time for a total of four hours per eight-hour day; walk for one hour at a time for a total of eight hours per eight-hour day; lift and carry 15 pounds constantly; pull/push up to 10 pounds constantly; reach at waist level, above shoulder level constantly, below waist level only occasionally.

25. Dr. Polukhin opined that Mammen had been adequately treated and rehabilitated from all of her conditions and that she was capable of being engaged in substantial gainful activity. She stated that she had been taking care of many patients with chronic pain syndrome and fibromyalgia and that she truly believes that "intelligent,

educated, good looking female like Ms. Mammen should be working serving people in need and contributing to the American society."

26. Using the functional capabilities based on the IME from Dr. Polukhin, an Employability Analysis was conducted, and it was determined that Mammen could perform various occupations.

27. Based on Dr. Polukhin's report and the Employability Analysis, Hartford terminated Mammen's benefit effective March 14, 2015.

28. The notice of the termination of benefits was set forth in a letter dated March 18, 2015. The notice failed to meet the requirements under the LTD Plan and ERISA regulations by failing to provide a description of additional material information necessary for the claimant to perfect the claim and an explanation of why such material information is necessary. 29 C.F.R. § 2560.503-1(g)(iii).

29. Mammen was told by Hartford's claim representative that all that was necessary to appeal was to send in a letter of appeal.

30. Mammen submitted a letter of appeal. Her letter stated she met with Dr. Polukhin for only 15 minutes. She stated she had difficulty understanding the questions asked by Dr. Polukhin as there was a language barrier. She states that although palmer-plantar hyperkeratosis is a primary ailment, Dr. Polukhin never asked to see her feet. She argued that Dr. Ofstedal had been her primary physician since 1998 and that his opinion should be given weight over Dr. Polukhin who only evaluated her for 15 minutes. She states that she requires regular assistance for even the most basic tasks, and that it is not physically possible for her to perform the jobs suggested in the denial letter.

31. Dr. Ofstedal wrote a letter in support describing her medical conditions and stating in his opinion she should continue on full disability.

32. Chiropractor Kyle Hagel also wrote a letter in support, stating that Mammen has been a patient under his care for chronic neck and back pain. He states she lives across the street from his office and even that is too far for her to walk some days.

33. Hartford did not take action to follow up on Mammen's complaint about Dr. Polukhin's evaluation, and continued to use her report in the appeal process.

34. As part of the appeal review, Mammen's claim was reviewed by Morohunfolu Akinnusi, M.D. A report was provided by Dr. Akinnusi on June 19, 2015. Dr. Akinnusi disagreed with Dr. Polukhin and found that restrictions and limitations are supported, finding the claimant is unable to undertake work which requires standing or frequent walking, as she is limited by palmer-plantar hyperkeratosis. Based on his review, he found the following restrictions and limitations supported: standing and walking no longer than five minutes at a time for a total of 40 minutes per eight-hour day due to foot discomfort. He did not find other restrictions stating that even though there were complaints of chronic neck and back pain and fibromyalgia, physical examination revealed full range of motion and no synovitis.

35. A revised Employability Analysis was conducted based on Dr. Akinnusi's review. However, the Employability Analysis failed to consider Dr. Akinnui's restrictions and limitations of standing and walking no longer than five minutes at a time for a total of 40 minutes per eight-hour day. Dr. Polukhin's restrictions and limitations

continued to be used as the basis for the analysis. The profile for the analysis was not changed to incorporate the restrictions and limitations set forth by Dr. Akinnusi.

36. Hartford issued a denial letter dated June 30, 2015, based on the review by Dr. Akinnusi and the revised Employability Analysis, upholding the termination of benefits.

## COUNT I—CLAIM FOR BENEFITS DUE PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

37. Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

38. Plaintiff has satisfied the LTD plan definition of disability continuously and from the date benefits were terminated through the present date.

39. Defendants' denial of LTD benefits violates ERISA. 29 U.S. § 1132(a)(1)(B).

40. Hartford's decision to terminate Mammen's LTD benefits is in breach of the LTD plan terms and ERISA.

41. By reason of the foregoing, Plaintiff is entitled to judgment against Defendants for reinstatement in the LTD plan, retroactive and ongoing disability benefits, interest, and reasonable attorneys' fees and costs.

## COUNT II—ATTORNEYS' FEE AND COSTS

42. Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

43. Plaintiff has been forced to bring the instant action as a direct result of Defendant Hartford's violations.

44. As a direct result of Defendant Hartford's acts and failures, Plaintiff has incurred attorneys' fees and costs. Plaintiff is entitled to recover her attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jocelyn Mammen requests that the Court:

1. Adjudicate that Plaintiff meets the definition of disability under the LTD plan.

2. Adjudicate that Plaintiff is awarded retroactive monthly benefits under the LTD plan, since the date benefits were terminated, plus interest.

3. Reinstate Plaintiff into the LTD plan and commence the payment of monthly benefits going forward from the date of judgment according to the terms of the LTD plan.

4. Award Plaintiff the cost, disbursements and other expenses of this litigation, and reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g).

5. Award such additional and further relief as the Court may deem just and proper.

Dated: March 7, 2018

**HELLMUTH & JOHNSON, PLLC**

By: _____
Denise Yegge Tataryn (#179127)
8050 West 78th Street
Edina, Minnesota 55439
Phone: (952) 941-4005
Fax: (952) 941-2337

**ATTORNEY FOR PLAINTIFF
JOCELYN MAMMEN**