## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **JOCELYN MAMMEN,** | ) |
| | ) |
| Plaintiff, | ) Case No.: 0:18-CV-00640-WMW-BRT |
| | ) |
| v. | ) **Judge Wilhelmina M. Wright** |
| | ) **Magistrate Judge Becky R. Thorson** |
| **HARTFORD LIFE & ACCIDENT** | ) |
| **INSURANCE COMPANY, TARGET** | ) **ANSWER AND AFFIRMATIVE** |
| **CORPORATION – LTD RESERVE** | ) **DEFENSES TO PLAINTIFF'S** |
| **BUY-OUT, PLAN/PLAN** | ) **COMPLAINT** |
| **ADMINISTRATOR,** | ) |
| | ) |
| Defendants. | ) |

Defendant Hartford Life and Accident Insurance Company ("Hartford"), by and through its attorneys, Elizabeth G. Doolin and Adam S. Huhta, states as follows for its Answer to Plaintiff's Complaint:

### JURISDICTION AND VENUE

1. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and principles of federal common law developed thereunder.

**ANSWER:** Hartford admits that this action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Hartford denies the remaining allegations of Paragraph 1.

2. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(e)(1), ERISA § 502(e)(1), and federal questions [sic] jurisdiction under 28 U.S.C. § 1331.

**ANSWER:** Hartford admits that this Court has jurisdiction of this action pursuant to 29 U.S.C. § 1132(e)(1), which is ERISA § 502(e)(1), and federal question jurisdiction under 28 U.S.C. § 1331. Hartford denies the remaining allegations of Paragraph 2.

3.  Venue is proper in this District under 29 U.S.C. § 1132(e)(2), ERISA § 502(e)(2), because the case involves an employee benefit plan administered in this District and the Defendants may be found in this District.

**ANSWER:** Hartford admits that venue is proper in this District under 29 U.S.C. § 1132(e)(2), which is ERISA § 502(e)(2). Hartford admits that the plan administrator, Target Corporation – LTD Reserve Buy-Out, is located in Minneapolis, Minnesota, within this District, and that Hartford does business within this District.

4.  Plaintiff Jocelyn Mammen ("Mammen" or "Plaintiff") resides in Minneapolis, Minnesota.

**ANSWER:** Hartford lacks knowledge or information sufficient to form a belief as to where Jocelyn Mammen ("Mammen") currently resides, and as such lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4.

5.  Mammen was formerly employed by Target Corporation.

**ANSWER:** Hartford admits, upon information and belief, the allegations of Paragraph 5.

6.  As a consequence of her employment, Mammen participated in Target's long-term disability plan.

**ANSWER:** Hartford admits that Mammen participated in Target Corporation's long-term disability plan and was eligible to do so as a consequence of her employment with Target Corporation. Hartford denies the remaining allegations of Paragraph 6 to the extent they are inconsistent with this response.

7. Target's long-term disability plan was self-insured during Mammen's employment. Based on information and belief, in 2009, Hartford Life & Accident Insurance Company took over funding of Target's self-funded long-term disability program through a reserve buy-out program. Hartford Life & Accident Insurance Company took over liability, effective January 1, 2010, under the Policy Number GLT-395265.

**ANSWER:** Hartford admits, upon information and belief, that Target Corporation's long-term disability plan was self-insured during Mammen's employment with Target Corporation. Hartford admits that it issued Policy Number GLT-395265 with a Policy Effective Date of January 1, 2010 and Policyholder "Target Corporation – LTD Reserve Buy-Out" (the "Policy"). The Eligible Class for Coverage under the Policy was "All non-exempt Employees, as reported to Us by the Policyholder, who became disabled prior to January 1, 2009 while covered under a plan of long term Disability benefits that was sponsored by the Policyholder." Hartford denies the remaining allegations of Paragraph 7.

8. Mammen's benefit is now payable under the Target Corporation—LTD Reserve Buy-Out Plan. The Plan Number is GLT-597. The plan administrator and policyholder are also identified as Target Corporation LTD Reserve Buy-Out.

**ANSWER:** Hartford admits that, as reflected in the Policy, the Plan Name is "Target Corporation – LTD Reserve Buy-Out" (the "Plan"), the Plan Number is GLT-597, and "Target Corporation – LTD Reserve Buy-Out" is designated as both the Plan Administrator and Policyholder." Hartford denies the remaining allegations of Paragraph 8.

9. Hartford Life & Accident Insurance Company ("Hartford") was at all relevant times during the claims denial process the insurer of, the claims administrator for, and a fiduciary of the LTD plan.

**ANSWER:** Hartford admits that, since the January 1, 2010 Policy Effective Date, Hartford has been the insurer that issued the Policy, the claims administrator for the Policy, the claims fiduciary for benefits provided under the Policy, and has had full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy. Hartford denies the remaining allegations of Paragraph 9.

## FACTUAL ALLEGATIONS

10. Plaintiff Jocelyn Mammen worked as an Inventory/Management Specialist at Target Corporation at the time of her disability on April 30, 2003. As an employee of Target Corporation, she became eligible for and was covered as a participant in Target Corporation's group long-term disability plan.

**ANSWER:** Hartford admits, upon information and belief, that Mammen worked at Target Corporation, that her coverage under a long-term disability plan related to her employment with Target Corporation became effective on January 29, 2002, and that the last date she worked at Target Corporation was April 30, 2003. Hartford admits, upon information and belief, that Mammen was a participant under a long-term disability plan related to her employment with Target Corporation and became eligible for and received benefits under such plan. Hartford lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 10.

11. Mammen initially became disabled due to her pregnancy in 2003 with a diagnosis of pubic symphysis diastasis (separation of the pubic bone), sciatica and chronic pain. Her last date of work was April 30, 2003. She was later diagnosed with fibromyalgia and other conditions.

**ANSWER:** Hartford admits, upon information and belief, that the last date Mammen worked at Target Corporation was April 30, 2003. Hartford admits that Mammen was diagnosed with fibromyalgia at some point after April 30, 2003. Hartford admits, upon

4

information and belief, that Mammen received disability benefits under a long-term disability plan related to her employment with Target Corporation. Hartford lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 11.

12. Mammen was approved for long-term disability benefits. Disability under the long-term disability plan is defined as:

> Disability or Disabled means during the first 12 months of benefit payments, Your Disability must prevent You from performing Any Occupation and, following the 12 months period, Disability must meet two tests:
>
> 1) the Disability must prevent You from engaging in any work or occupation for which You are, or may become, reasonably fitted by education, training or experience; and
>
> 2) the Disability must meet Social Security disability requirements and Your approval or retroactive approval for Social Security Disability Income must occur within the 24 months period following the date Disability began.

**ANSWER:** Hartford admits that Mammen was approved for and received long-term disability benefits under the Policy for a period of time. Hartford further admits that the definition of Disability or Disabled set forth in Paragraph 12 is included in the Policy. Hartford denies any remaining allegations of Paragraph 12 to the extent they are inconsistent with this response.

13. Mammen filed a claim for Social Security on May 26, 2004 and was approved for Social Security Disability on August 20, 2004. Mammen continues to receive Social Security Disability benefits.

**ANSWER:** Hartford admits that Mammen filed a claim for Social Security benefits and received Social Security Disability benefits for a period of time. Hartford

lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 13.

14. Mammen was determined to be disabled and meet the terms of the plan until Hartford terminated her benefits effective March 14, 2015.

**ANSWER:** Hartford admits that Mammen received long-term disability benefits under the Policy for a period of time. Hartford further admits that it determined that Mammen did not meet the definition of Disability or Disabled in the Policy beyond March 13, 2015. Hartford denies the remaining allegations of Paragraph 14.

15. In 2006 treating physician Joseph Ofstedal, M.D., completed a disability form giving the diagnoses of fibromyalgia, palmer-plantar hyperkeratosis, and elevated CSF opening pressure, with symptoms of fatigue, headache and chronic pain.

**ANSWER:** Hartford admits, upon information and belief, that Dr. Joseph Ofstedal completed an Attending Physician's Statement dated December 5, 2006 related to Mammen which stated diagnoses of fibromyalgia, palmer-plantar hyperkeratosis, and elevated CSF opening pressure, as well as subjective symptoms of fatigue, headache, and chronic pain. Hartford denies any remaining allegations of Paragraph 15 to the extent that they are inconsistent with this response.

16. A Physician Statement of Continued Disability was completed by Dr. Ofstedal in 2010, providing a primary diagnosis of fibromyalgia and palmer-plantar hyperkeratosis, listing symptoms of pain, fatigue, and cognitive dysfunction. Physical exam findings included hand and feet pain, inflammation, thick skin, and tender trigger points.

**ANSWER:** Hartford admits, upon information and belief, that Dr. Joseph Ofstedal completed an Attending Physician's Statement of Continued Disability dated June 23, 2010 related to Mammen which stated primary diagnoses of fibromyalgia and palmer-plantar

hyperkeratosis, current subjective symptoms of pain, fatigue, and cognitive dysfunction, and current physical examination findings of hand and feet pain, inflammation, thick skin, and tender trigger points.  Hartford denies the remaining allegations of Paragraph 16.

17.   In 2010, Mammen had a consult at the Sleep Medicine Clinic at the University of Minnesota Medical Center, Fairview. She was diagnosed with chronic insomnia, multifactorial, probable restless leg syndrome, and night eating syndrome among other diagnoses.

**ANSWER:**   Harford admits that Mammen went to the University of Minnesota Medical Center, Sleep Disorder Center, on April 1, 2010, resulting in a polysomnography report signed by Dr. Con Iber.  This report reflected that the study was performed to evaluate for OSA (obstructive sleep apnea) in a patient with sleep-related eating disorder, insomnia, and snoring and stated, in part, that the study was "suggestive of insignificant sleep apnea," that "[n]o abnormal sleep-related behaviors were noted during this recording," and that "occasional periodic limb movements without arousal were noted." Hartford denies the remaining allegations of Paragraph 17.

18.   A Physician Statement of Continued Disability was completed by Dr. Ofstedal on April 26, 2013, providing a primary diagnoses of fibromyalgia and palmer-plantar hyperkeratosis and secondary diagnosis of chronic pain, listing symptoms of pain, fatigue and cognitive dysfunction. Physical exam findings included fatigue, diffuse tenderness and thick callous feet.

**ANSWER:**   Hartford admits, upon information and belief, that Dr. Joseph Ofstedal completed an Attending Physician's Statement of Functionality dated April 26, 2013 related to Mammen which stated primary diagnoses of fibromyalgia and palmer-plantar hyperkeratosis, secondary diagnosis of chronic pain, subjective symptoms of pain, fatigue, and cognitive dysfunction, and physical examination findings of fatigue, diffuse

7

tenderness, and thick callous feet.  Hartford denies the remaining allegations of Paragraph 18.

19. Dr. Ofstedal's notes on April 21, 2014 state that Mammen has a lot of pain and that her pain overall is worse. He states her sleep is very disruptive. He indicates that her medications cause side effects.

**ANSWER:**  Hartford admits that Dr. Ofstedal's April 21, 2014 medical record related to Mammen reflects Mammen's concerns and indicates that she "has a lot of pain," that her "Pain overall worse," and that her "sleep is very disrupted." Hartford denies that Dr. Ofstedal made any of the findings suggested in Paragraph 19 and denies the remaining allegations of Paragraph 19.

20. In February 2014, Hartford conducted an interview of Mammen. She informed Hartford that nothing has changed regarding her medical condition. She stated that she is very limited in her walking/standing ability due to her foot disease, that she has fatigue from her fibromyalgia and spends most of her time in bed.

**ANSWER:**  Hartford admits that Mammen was interviewed on February 2, 2014 by one of Hartford's examiners. Hartford admits that the notes from that interview reflect that Mammen reported that she sees Dr. Ofstedal about twice a year "because her meds are pretty stable and nothing really changes too much."  Hartford further admits that the notes from that interview reflect that Mammen reported that she was "very limited in her walking/standing ability due to foot disease" and that she "deals with fatigue from fibro and says she spends most of her time in bed."  Hartford denies the remaining allegations of Paragraph 20.

21. Mammen's claim was proactively reviewed by Hartford's surveillance investigative unit, but the unit was unable to identify any evidence warranting continued investigation.

8

**ANSWER:**   Hartford admits that surveillance related to Mammen was conducted in December 2011 and July and August 2014 and that, after the 2014 surveillance, it was noted "[a]t this time there are no material inconsistencies that support ongoing investigation" and the investigation by Hartford's SIU Department was then closed. Hartford denies the remaining allegations of Paragraph 21.

22. Hartford then decided to order an independent medical examination of Mammen, determining that Mammen's "extent of functionality" was "still unclear."

**ANSWER:**   Hartford admits that on October 20, 2014 one of its examiners made a note regarding Mammen and commented, in part, that "Specific R&L's and extent of functionality are still unclear." This examiner then recommended an independent medical examination to determine the extent of physical limitations. Hartford denies the allegations of Paragraph 22 to the extent they are inconsistent with this response.

23. At the request of Hartford, Mammen attended an independent medical evaluation conducted by Elena Polukhin, M.D., on December 16, 2014.

**ANSWER:**   Hartford admits the allegations of Paragraph 23.

24. Dr. Polukhin issued a report dated December 18, 2014. She opined that Mammen was capable of working full-time sedentary work, able to sit eight hours at a time for a total of eight hours a day, with a break 5-10 minutes every hour to stand and stretch; stand for one hour at a time for a total of four hours per eight-hour day; walk for one hour at a time for a total of eight hours per eight-hour day; lift and carry 15 pounds constantly; pull/push up to 10 pounds constantly; reach at waist level, above shoulder level constantly, below waist level only occasionally.

**ANSWER:**   Hartford admits that Dr. Polukhin issued a report dated December 18, 2014 and states that this document speaks for itself. Hartford denies any allegations of Paragraph 24 to the extent that they are inconsistent with the contents of Dr. Polukhin's December 18, 2014 report.

9

25. Dr. Polukhin opined that Mammen had been adequately treated and rehabilitated from all of her conditions and that she was capable of being engaged in substantial gainful activity. She stated that she had been taking care of many patients with chronic pain syndrome and fibromyalgia and that she truly believes that "intelligent, educated, good looking female like Ms. Mammen should be working serving people in need and contributing to the American society."

**ANSWER:** Hartford admits that Dr. Polukhin issued a report dated December 18, 2014 and states that this document speaks for itself. Hartford denies any allegations of Paragraph 25 to the extent that they are inconsistent with the contents of Dr. Polukhin's December 18, 2014 report.

26. Using the functional capabilities based on the IME from Dr. Polukhin, an Employability Analysis was conducted, and it was determined that Mammen could perform various occupations.

**ANSWER:** Hartford admits the allegations of Paragraph 26, as to the March 4, 2015 Employability Analysis Report.

27. Based on Dr. Polukhin's report and the Employability Analysis, Hartford terminated Mammen's benefit effective March 14, 2015.

**ANSWER:** Hartford admits that it determined that Mammen did not meet the definition of Disability or Disabled in the Policy beyond March 13, 2015 and that long-term disability benefits were not payable to Mammen as of March 14, 2015. Further answering, Hartford states that this benefit determination was based on the Policy language and all the documents and information Hartford had related to Mammen as a whole, including but not limited to the results of the independent medical evaluation completed by Dr. Polukhin and the March 4, 2015 Employability Analysis Report. Hartford denies the remaining allegations of Paragraph 27 to the extent they are inconsistent with its March 18, 2018 letter, which speaks for itself.

28. The notice of the termination of benefits was set forth in a letter dated March 18, 2015. The notice failed to meet the requirements under the LTD Plan and ERISA regulations by failing to provide a description of additional material information necessary for the claimant to perfect the claim and an explanation of why such material information is necessary. 29 C.F.R. § 2560.503-1(g)(iii).

**ANSWER:** Hartford admits that its decision to terminate Mammen's long-term disability benefits was set forth in its March 18, 2015 letter to Mammen. Hartford denies that the letter failed to meet the requirements under the Plan and ERISA, and denies the remaining allegations of Paragraph 28.

29. Mammen was told by Hartford's claim representative that all that was necessary to appeal was to send in a letter of appeal.

**ANSWER:** Hartford denies the allegations of Paragraph 29.

30. Mammen submitted a letter of appeal. Her letter stated she met with Dr. Polukhin for only 15 minutes. She stated she had difficulty understanding the questions asked by Dr. Polukhin as there was a language barrier. She states that although palmer-plantar hyperkeratosis is a primary ailment, Dr. Polukhin never asked to see her feet. She argued that Dr. Ofstedal had been her primary physician since 1998 and that his opinion should be given weight over Dr. Polukhin who only evaluated her for 15 minutes. She states that she requires regular assistance for even the most basic tasks, and that it is not physically possible for her to perform the jobs suggested in the denial letter.

**ANSWER:** Hartford admits that on or about April 29, 2015 Mammen submitted a letter to Hartford to appeal closure of her long-term disability claim and states that this document speaks for itself. Hartford denies any allegations of Paragraph 30 to the extent that they are inconsistent with the contents of Mammen's appeal letter to Hartford.

31. Dr. Ofstedal wrote a letter in support describing her medical conditions and stating in his opinion she should continue on full disability.

**ANSWER:** Hartford admits that it received a letter dated March 23, 2015 related to Mammen reflecting it was from Dr. Ofstedal and states that this document speaks for

11

itself. Hartford denies any allegations of Paragraph 31 to the extent that they are inconsistent with the contents of Dr. Ofstedal's March 23, 2015 letter.

32. Chiropractor Kyle Hagel also wrote a letter in support, stating that Mammen has been a patient under his care for chronic neck and back pain. He states she lives across the street from his office and even that is too far for her to walk some days.

**ANSWER:** Hartford admits that it received a letter dated May 18, 2015 related to Mammen reflecting it was from Kyle Hagel, DC and states that this document speaks for itself. Hartford denies any allegations of Paragraph 32 to the extent that they are inconsistent with the contents of Kyle Hagel, DC's May 18, 2015 letter.

33. Hartford did not take action to follow up on Mammen's complaint about Dr. Polukhin's evaluation, and continued to use her report in the appeal process.

**ANSWER:** Hartford admits that Dr. Polukhin's IME was considered as part of the appeal process, together with all of the other information and documents in connection with Mammen's claim, but denies the remaining allegations of Paragraph 33.

34. As part of the appeal review, Mammen's claim was reviewed by Morohunfolu Akinnusi, M.D. A report was provided by Dr. Akinnusi on June 19, 2015. Dr. Akinnusi disagreed with Dr. Polukhin and found that restrictions and limitations are supported, finding the claimant is unable to undertake work which requires standing or frequent walking, as she is limited by palmer-plantar hyperkeratosis. Based on his review, he found the following restrictions and limitations supported: standing and walking no longer than five minutes at a time for a total of 40 minutes per eight-hour day due to foot discomfort. He did not find other restrictions stating that even though there were complaints of chronic neck and back pain and fibromyalgia, physical examination revealed full range of motion and no synovitis.

**ANSWER:** Hartford admits that, as part of the appeal review, Mammen's clinical case was reviewed by Morohunfolu Akinnusi, M.D. Hartford also admits that it received Dr. Akinnusi's report dated June 19, 2015, and states that this document speaks for itself.

Hartford denies any allegations of Paragraph 34 to the extent that they are inconsistent with the contents of Dr. Akinnusi's June 19, 2015 response.

35. A revised Employability Analysis was conducted based on Dr. Akinnusi's review. However, the Employability Analysis failed to consider Dr. Akinnusi's restrictions and limitations of standing and walking no longer than five minutes at a time for a total of 40 minutes per eight-hour day. Dr. Polukhin's restrictions and limitations continued to be used as the basis for the analysis. The profile for the analysis was not changed to incorporate the restrictions and limitations set forth by Dr. Akinnusi.

**ANSWER:** Hartford admits that an Addendum Employability Analysis Report was issued dated June 30, 2015 and that the functional capabilities used in the analysis were based on the peer review completed by Morohunfolu E. Akinnusi, M.D. Hartford denies the remaining allegations of Paragraph 35.

36. Hartford issued a denial letter dated June 30, 2015, based on the review by Dr. Akinnusi and the revised Employability Analysis, upholding the termination of benefits.

**ANSWER:** Hartford admits that in its letter to Mammen dated June 30, 2015 it found that the termination of her claim must be upheld, relying in part on Dr. Akinnusi's findings and opinion and the employability analysis, as well as all the documents and information Hartford had related to Mammen as a whole. Hartford denies the remaining allegations of Paragraph 36.

### COUNT I – CLAIM FOR BENEFITS DUE PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

37. Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

**ANSWER:** Hartford restates and realleges its answers to the allegations in the foregoing paragraphs as and for its answer to Paragraph 37.

38. Plaintiff has satisfied the LTD plan definition of disability continuously and from the date benefits were terminated through the present date.

**ANSWER:** Hartford denies the allegations of Paragraph 38.

39. Defendants' denial of LTD benefits violates ERISA. 29 U.S. § 1132(a)(1)(B).

**ANSWER:** Hartford denies the allegations of Paragraph 39.

40. Hartford's decision to terminate Mammen's LTD benefits is in breach of the LTD plan terms and ERISA.

**ANSWER:** Hartford denies the allegations of Paragraph 40.

41. By reason of the foregoing, Plaintiff is entitled to judgment against Defendants for reinstatement in the LTD plan, retroactive and ongoing disability benefits, interest, and reasonable attorneys' fees and costs.

**ANSWER:** Hartford denies the allegations of Paragraph 41.

## COUNT II – ATTORNEYS' FEES AND COSTS

42. Plaintiff restates and realleges the allegations contained in the foregoing paragraphs.

**ANSWER:** Hartford restates and realleges its answers to the allegations in the foregoing paragraphs as and for its answer to Paragraph 42.

43. Plaintiff has been forced to bring the instant action as a direct result of Defendant Hartford's violations.

**ANSWER:** Hartford denies that it violated ERISA or any terms or conditions of the Policy or Plan, and denies the remaining allegations of Paragraph 43.

44. As a direct result of Defendant Hartford's acts and failures, Plaintiff has incurred attorneys' fees and costs. Plaintiff is entitled to recover her attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

**ANSWER:** Hartford denies the allegations of Paragraph 44.

**WHEREFORE**, Defendant Hartford Life and Accident Insurance Company denies that Plaintiff is entitled to the relief sought, or to any relief whatsoever, and hereby requests judgment in its favor and against Plaintiff.

## **AFFIRMATIVE DEFENSES**

Defendant Hartford Life and Accident Insurance Company ("Hartford"), by and through its attorneys, Elizabeth G. Doolin and Adam S. Huhta, states as follows for its Affirmative Defenses to Plaintiff's Complaint:

1. Plaintiff's claims are time-barred under the terms, conditions, and limitations of the Policy and/or the Plan. Specifically, under the Policy's Legal Actions provision, legal action cannot be taken against Hartford "3 years after the date Written Proof of Loss is required to be given according to the terms of The Policy." When Proof of Loss is requested while someone is on disability, Hartford "must receive the proof within 30 days of the request." This action was not filed within the required time-frame and accordingly is time-barred.

2. In the event this Court finds Plaintiff is entitled to additional benefits under the Plan and/or the Policy, which Hartford denies, Plaintiff's damages shall be reduced by any and all earnings and disability or other benefits paid or payable, or to which Plaintiff has or had a right (including, but not limited to, Social Security benefits) in accordance with the terms, conditions, limitations, and exclusions of the Plan and/or the Policy, which payments act as a setoff.

15

3. The long-term disability decision was neither arbitrary nor capricious, and the arbitrary and capricious standard is the applicable standard of review to be applied in this action.

4. Plaintiff's claims are barred because Hartford discharged its duties in the interest of the Plan Participants and, in doing so, acted in accordance with ERISA and the documents and instruments governing the Plan.

5. Plaintiff is precluded from recovering any of the alleged damages under the terms of the Plan and/or the Policy and/or federal common law.

6. Hartford asserts that Plaintiff failed to demonstrate continued eligibility for benefits under the terms and provisions of the Plan and/or the Policy and/or lacks standing to bring her claims.

7. To the extent Plaintiff asserts any claim or relies upon any evidence not previously submitted or furnished to Hartford, such claim or evidence is barred by Plaintiff's exhaustion of all administrative or other remedies under the Plan and/or the Policy.

**WHEREFORE**, Defendant Hartford Life and Accident Insurance Company denies that Plaintiff is entitled to the relief sought, or to any relief whatsoever, and hereby requests judgment in its favor and against Plaintiff.

Dated: **May 4, 2018.**                            Respectfully submitted,

                                        HARTFORD LIFE AND ACCIDENT
                                        INSURANCE COMPANY

                                        By:   /s/ Elizabeth G. Doolin
                                              One of their Attorneys

Elizabeth G. Doolin (Pro Hac Vice, IL #6210358)
CHITTENDEN, MURDAY & NOVOTNY LLC
303 W. Madison Street, Suite 1400
Chicago, IL 60606
(312) 281-3600 (tel)
(312) 281-3678 (fax)
edoolin@cmn-law.com

Adam S. Huhta
Huhta Law Firm, PLLC
36 South 9th Street
Suite 200
Minneapolis, MN 55402
(612) 353-4044
adam@huhtalaw.com

*Attorneys for Defendant Hartford Life and Accident Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on **May 4, 2018**, I electronically filed the foregoing Answer and Affirmative Defenses to Plaintiff's Complaint with the Clerk of Court for the United States District Court of Minnesota, using the court's CM/ECF system, which sent notification of such filing to the following registered CM/ECF participants:

>Denise Y. Tataryn, Esq.
>Hellmuth & Johnson, PLLC
>8050 West 78th Street
>Edina, MN 55439
>dtataryn@hjlawfirm.com

        /s/ Elizabeth G. Doolin
        Elizabeth G. Doolin